[Civ. No. 4006.   Third Appellate District.—November 1, 1930.]

SIMON DERMER, Respondent, v. AUGUST PISTORESI et al., Appellants.

Barcroft & Barcroft for Appellants.

Conley, Conley & Conley, W. M. Conley, Philip Conley and Matthew Conley for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment rendered upon a verdict of $3,500 secured as damages on account of the death of plaintiff's son, which resulted from an automobile casualty while the boy was riding in the machine as a guest.

On November 25, 1928, at 7 o'clock P. M., Simon Dermer, Jr., the son of plaintiff, aged nineteen years, was riding as a guest with the defendant August Pistoresi along the highway near Madera, in the Chevrolet automobile belonging to the defendant Creuffe Pistoresi. The machine was running at the rate of speed of about 30 miles an hour. It was dark. The headlights illuminated the highway 150 feet ahead of the car. Reaching a turn in the roadway, which the driver failed to see, the machine ran into the embankment at the side of the highway and overturned. Regarding this inattention and failure to observe the curve in the roadway the driver testified: "I could have seen it, but I didn't see it. . . . I knew it was there, but I did not know I was there with the car yet." Simon Dermer, Jr., was caught beneath the overturned car and sustained fatal injuries, from which he died two days later. An action for damages was instituted. A jury trial resulted in a judgment of $3,500 in favor of the plaintiff.

A reversal of the judgment is sought upon two grounds. It is asserted that section 141¾ of the California Vehicle Act of 1929 is retroactive in its effect and that it, therefore, precludes the recovery of damages from the owner or driver of a machine for death or injury of a guest who was riding therein, except upon proof that the death or injury was sustained as a result of the "intoxication, wilful misconduct or gross negligence" of the owner or driver of the vehicle. It is also claimed the attorney for plaintiff was guilty of prejudicial misconduct by disclosing to the jury in the course of the trial the fact that the defendants were protected against loss from such an accident by indemnity insurance.

■ It now appears to be the settled law of California that section 141¾ of the California Vehicle Act is not retroactive in its application, and that the former doctrine of negligence applies to all actions for damages for death or injury of a guest while riding in an automobile which

accident occurred prior to August 14, 1929, when the California Vehicle Act went into effect. It was, therefore, not necessary to plead or prove gross negligence on the part of the driver of the machine in the present case. (*Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438]; *Martinelli* v. *Poley*, 210 Cal. 450 [292 Pac. 451]; *Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62].)

There was no prejudicial misconduct on the part of counsel for the plaintiff in referring to an insurance company during the course of the trial, under the circumstances of this case.

In the examination of prospective jurors on the *voir dire* they were asked if they were stockholders or interested in any insurance company. Some of them were asked if they were so interested in the Royal Indemnity Company. These were competent questions to ascertain the state of mind of the jurors. If any of them were officers or stockholders in the insurance company which carried indemnity insurance on the defendant's automobile, or in any other indemnity insurance company, they would not be presumed to be as free from bias as though they were not so interested. The relationship of any prospective juror to an indemnity insurance company is a fact the plaintiff has a right to elicit for the purpose of exercising peremptory challenges if he so desires. (*Arnold* v. *California P. C. Co.*, 41 Cal. App. 420 [182 Pac. 171]; *Williamson* v. *Hardy*, 47 Cal. App. 377 [190 Pac. 646]; *Potter* v. *Driver*, 97 Cal. App. 311 [275 Pac. 526]; 4 Blashfield's Cyc. of Auto Law, p. 1521, sec. 19.)

In answer to a general question propounded to a juror as to whether he was interested in any company insuring against liability for automobile accidents, he replied that he was not. Plaintiff's attorney then said: "So, therefore, you are free and open-minded in this matter?" The juror replied, "Yes, sir." On motion this question and answer were stricken from the record. Even though this question did contain a subtle inference that a surety company was indirectly interested in the outcome of the cause, it was harmless. In the course of the examination of the jurors the court made it very clear to the jurors that their verdict was to be based solely on the merits of the cause, and that they were to disregard any question of indemnity

insurance. The court said: "There are no outside influences at all of any kind that should have any part in your deliberation in this case, and you are not to speculate as to whether or not the defendants are or are not insured, that has nothing to do with this case, it is just the question, the same as an individual, if the . . . (defendants are) liable under the law they should be assessed damages, and on the other hand, if . . . they are not liable, you cannot figure and say 'well, they must be insured and we will get the insurance company', for that would be a miscarriage of justice."

■ An appellate court will not assume that a jury will deliberately disregard their oaths and an instruction so explicit as the foregoing, and presume prejudicial error from the mere discovery of the interest of a surety company in the outcome of the action, unless that information has been unjustifiably elicited by the plaintiff in bad faith.

■ Finally, it is asserted the most grievous misconduct of the plaintiff's counsel in disclosing the interest of an insurance company occurred as follows: August Pistoresi, who drove the automobile at the time of the accident, was being examined as a witness. For the first time, to the knowledge of plaintiff, he claimed that the accident was caused by Simon Dermer, Jr., distracting his attention from the highway just before they reached the turn in the road, by pulling at his sleeve to emphasize some point in a story which he was relating. Since the alleged contributory negligence of the deceased was an issue in the case, this circumstance became of vital importance. The merits of the entire case hinged upon the question as to whether the driver of the machine was guilty of negligence by virtue of his inattention to the highway and his careless operation of the automobile. Discrediting this statement, and in order to lay the foundation for impeachment of the witness on this subject, he was asked on cross-examination: "Q. Who was the first person you told that this boy pulled your shirt? A. I never told anybody. . . . Q. You never told anybody? A. The Doctor (Ransom) I told the Doctor. . . . Q. Did you ever tell anybody else? A. No. Q. Wasn't there some man in San Francisco that came out to see you, and talked to you about this accident? A. Sure. . . . Q. Didn't the suggestion that your shirt had been pulled by

this boy come from that man who came to see you from San Francisco? He told you that, didn't he? A. No, he never. Q. What did he say to you about it? A. He just asked me some questions, and I answered the way I wanted them. . . . Q. You are sure you told Doctor Ransom? Was Doctor Ransom present when that man talked to you? . . . A. No, sir, he was not. Q. That man from San Francisco told you who he was? A. He told me his name, but I forget. Q. Did he tell you why he came to see you? A. Yes, he told me he was an insurance man, but I just didn't want to tell him right away. . . . Q. Did you ever tell anybody else? A. No. Q. Anybody else that this boy had pulled your shirt? A. No.''

It appears from the admission of August Pistoresi that he had never told anyone, except the doctor, about this circumstance regarding the pulling of his sleeve, which clearly was intended to relieve him from negligence and place the blame for the accident upon the deceased boy. The doctor was called in rebuttal and virtually contradicted the statement that he had been told of the incident. When he was asked, ''Did Pistoresi make that statement to you?'' he replied, ''I do not remember that he did.''

This was a perfectly legitimate cross-examination of the witness. It does not appear to have been conducted in bad faith. It is not unreasonable, under the circumstances of this case, to assume that the plaintiff discredited this belated story regarding the pulling of the driver's sleeve. A plaintiff may not be deprived of the benefit of legitimate rebuttal to a pretended defense against a charge of negligence even though it may disclose the fact that a surety company is interested in the outcome of the action. (*Cozad* v. *Raisch Imp. Co.*, 175 Cal. 619 [166 Pac. 1000]; 4 Blashfield's Cyc. of Auto. Law, p. 1521, sec. 19.) In the authority last cited the author says:

''The fact of such insurance may, however, incidentally and unavoidably appear. There are many instances in which it may legitimately be developed in cross-examination, and . . . if it tends to prove any issue in the case or is relevant or material for any purpose, it cannot be excluded on the ground that it may tend to prejudice the defendant.''

The judgment is affirmed.