[Civ. No. 7917.   First Appellate District, Division One.—January 25, 1933.]

WAYNE NOBLE, a Minor, etc., Respondent, v. THOS. P. BACON, Appellant.

Brobeck, Phleger & Harrison, Bronson, Bronson & Slaven and Southall R. Pfund for Appellant.

C. D. Dethlefsen, Clifton Hildebrand and Thomas F. McCue for Respondent.

PARKER, J., *pro tem.*—This is an appeal by defendant from the judgment below entered on the jury's verdict, in favor of plaintiff, for $10,000, assessed as damages for personal injuries. At the outset appellant admits that there is evidence which the jury had a right to believe which supports the implied finding that defendant was negligent. It therefore becomes unnecessary to discuss any conflict in the evidence or to do more than sketch the facts, save as certain parts of the record become essential to illustrate the points presented.

The first claim of appellant is that the plaintiff was as a matter of law guilty of contributory negligence to an extent and with such relation to the accident as will bar

any recovery. The plaintiff at the time of the accident was a boy of the age of eleven years and some months, and apparently of full development proportionate to that age. There is no dispute that there was an accident wherein the plaintiff in some manner collided with an automobile driven by defendant. True, there is some conflict as to whether the plaintiff was struck head-on or whether the auto hit him after having passed partially the point where the plaintiff was standing. For the purposes hereof it is unnecessary to go into the minutest detail in this regard. The accident happened during the evening hours and at a time of general darkness. There is no question of the injuries sustained or the extent thereof, though some dispute arises as to the effect and permanency thereof. As to the manner of the occurrence there is a sharp and irreconcilable conflict. With this conflict we, however, on this phase of the case have little concern. We find sufficient evidence to support the following version of the accident· Plaintiff had alighted from an automobile at a point some 8 or 10 feet from the corner of two intersecting streets. He had alighted to the sidewalk and proceeded to the corner, it being his purpose to cross the street. He was at the regular point of crossing reserved for pedestrians and entered upon that section of the intersection so reserved. Before leaving the curb he paused and looked for approaching traffic. He stopped again after entering the intersection and looked in both directions and then proceeded. He had gone but a few feet from this last stop when the impact occurred. The defendant was driving his car to and through the intersection at a speed of 25 miles per hour in a 15-mile zone. The car of defendant was without lights of any kind, headlights or other lights, side or tail. The testimony showed, however, that the area of the intersection was lighted and that the car of defendant could be observed or at least was observed by one witness, although another witness testified that the first view of the approaching car was almost at the time of the accident. It may also be noted that the width of the street which the plaintiff was engaged in crossing was approximately 60 feet, perhaps little over 50.

Appellant contends that the law required of the plaintiff an ever alert vigilance throughout the entire crossing and

that this requirement is not satisfied by occasional glances. Then, argues appellant, the law presumes that to be seen which was in plain and common sight and that having seen the approaching car it was negligence, as a matter of law, for plaintiff to have proceeded. The contention is wholly argumentative and to a great extent academic. In the first place, there is testimony that the car was not seen until about the time of the impact. Repeating the record, the car had no lights and was approaching at a speed of 25 miles per hour, being at the rate of 36.66 feet per second. There are then so many factors that enter into a consideration of the question of negligence on the part of the pedestrian. We find the pedestrian in the lane provided for foot travel; it is night and dark. The street is narrow and the approach of the oncoming car is sudden. The car is unlighted and unobservable save for the street lights surrounding the area. The pedestrian, in the usual course of things, would look for a lighted car and the extent of his observation would be controlled more or less by the lights he might observe. The natural expectation of the foot man would be that approaching vehicles might yield or at least be under such speed control as would permit safety in crossing. Without further enumerating these varying and various factors we might concede that from a standpoint of fact negligence might be attributed to the pedestrian; nevertheless we must conclude that there are too many independent conditions to permit the law to set up any arbitrary requirements of conduct.

In *Smith* v. *Southern Pac. Co.*, 201 Cal. 57, 68 [255 Pac. 500, 505], it is said: " 'Each [referring to pedestrians and operators of vehicles] may rightfully expect that the other will, at the proper time, discharge his proper duty towards others. He cannot rely wholly on the care of others, nor, on that account, neglect to use the precautions which the particular situation demands of him. But he frequently must, to some extent, depend on others in such situations, and his conduct must be considered in view of that fact in determining whether or not it is negligent. His care, or want of care, in such cases is generally a matter to be determined by the jury from all the circumstances surrounding him at the time.' " The court quotes liberally

from *Scott* v. *San Bernardino etc. Co.,* 152 Cal. 604 [93 Pac. 677].

In the case of *Flach* v. *Fikes,* 204 Cal. 329, 332 [267 Pac. 1079, 1080], we find the following: ''He [the pedestrian] has a right to expect that those operating automobiles upon a public street will operate them in the manner and at the speed customary at the particular place. Whether such a person is guilty of contributory negligence in attempting to cross a street in front of an approaching automobile would depend upon all the circumstances under which he acted. This question is one for the determination of the jury or the trial court and their finding thereon is binding upon an appellate court.'' After citing many authorities in support of the foregoing the court continues: ''While the above authorities all deal with the rights and duties of a pedestrian in crossing a city street in front of an approaching street-car, we think the same rule should govern in the case of persons crossing in front of a moving automobile.'' In the same case the court reviews the factual situation with reference to the pedestrians observing the approaching automobile and concludes that if the former had looked he must have seen the approaching automobile. The court then says: ''He may well have reasoned that defendant was traveling at a lawful rate of speed and therefore he could cross the street before defendant's automobile would reach the point in the street over which deceased [plaintiff] would be required to pass in crossing the same. Had defendant been traveling at a lawful rate of speed decedent [plaintiff] might have crossed the street in safety. Under the circumstances whether he acted negligently or not was for the trial court, and its findings as to his negligence will not be disturbed on appeal.''

And finally the rule is enlarged upon and again exhaustively discussed in the case of *Leblanc* v. *Coverdale,* 213 Cal. 654 [3 Pac. (2d) 312]. We will not quote from the last-cited case, but a reading thereof will leave no doubt as to the question of plaintiff's contributory negligence being one for the jury.

In the briefs on file the parties have not discussed this question at any great length. The contentions of the respective parties go more to the question of the plaintiff's age, appellant arguing that a minor of the age of eleven

is chargeable with the same degree of care as an adult, while respondent cites much authority that in all cases the conduct of a minor is a question of fact for the jury.

From what we have said it becomes unnecessary to determine this question, inasmuch as a concession to appellant's contention would bring us only to the point hereinbefore determined. We conclude, therefore, that the question of plaintiff's negligence has been determined by the jury upon substantial testimony and we will not disturb the finding.

The next two grounds urged by appellant, while separately stated, will be considered as perforce they must, as one. These contentions are as follows: 1. The court erred in refusing to order a mistrial because of the injection of the element of insurance into the record. 2. The judgment should be reversed because defendant's right to a fair trial was prejudiced by the evidence and discussion of insurance.

Upon the *voir dire* of the jurors questions were asked concerning the interest, if any, the prospective juror might have in a certain insurance company. No impropriety is urged at this point. At the trial a certain witness was called by the plaintiff which witness was not an eye-witness to the accident and knew nothing concerning the facts of the occurrence. This witness was called to testify regarding a conversation had between the witness and the defendant. He was asked to state the conversation and what was said by the defendant. The reply was as follows: "He said he was very sorry he had hit the boy, he didn't see him until he hit him, and that his insurance company would take care of him." At this point discussion began. Counsel for appellant moved that the answer be stricken out on the ground that it was incompetent, irrelevant and immaterial; he then assigned the asking of the question as prejudicial error that could not be cured, and moved for a judgment of mistrial. Counsel for respondent contended the statement to be but an admission of liability and contended for its admission. Counsel for respondent disclaimed intent of bringing out the question of insurance. The court thereupon struck out all of the answer pertaining to insurance, and directed the jury to disregard it. Appellant then renewed his motion for a mistrial which the court again denied. There was then some further colloquy be-

tween court and counsel wherein the court suggested that counsel was blowing hot and cold, whereupon counsel for appellant stated: "Well, I want to blow hot right now, if your Honor please. The effect of this answer is in. We have got a statement here to the effect that this defendant would not have to pay any judgment that might be rendered against him, but that an insurance company would have to do so. Now we have got a situation here where the bell having been rung, cannot be unrung . . . Now we had better go into this. I want to say that the insurance company in this case is insolvent and can't pay anything, and counsel knows it." Whereupon counsel for respondent replied: "Well, let counsel go right ahead and show that if he can. We will show that they have plenty of assets. That's fine." They continued their cross-retorts on the subject of the carrier's solvency until stopped by the court saying: "You asked the Court to declare this a mistrial, Mr. Slaven [counsel for appellant]. The Court denied it because you moved to strike. You had not then asked that the jury be discharged. Now, you say you are perfectly willing to go into the question of insurance. The Court has no objection, counsel on the other side consenting." Counsel for respondent: "Yes, your Honor." This is all of the record necessary to cite at this period.

While a reference to the fact that defendant is insured against liability may be highly prejudicial, and the courts do not hesitate to reverse verdicts of juries where such evidence is improperly admitted, it is a well-settled exception to the general rule that where the reference to insurance is incidental to an admission of liability by defendant and a part of the same statement it is admissible, not to prove the fact of insurance, but solely because it is a part of the admission. (*Handley* v. *Lombardi*, 122 Cal. App. 22 [9 Pac. (2d) 867], and cases therein cited.)

In *King* v. *Wilson*, 116 Cal. App. 191 [2 Pac. (2d) 833, 834], the objectionable statement was as follows: " . . . he said he was sorry it all happened but he had insurance to pay for everything." The court refused to reverse the judgment and said: "The remaining question for decision is, did the answer tend to disclose acknowledgment of responsibility and, would its admission be such as to create a prejudicial error that would warrant a reversal of the

judgment of the trial court? It will be noted that the answer purported to relate a conversation had with defendant some time after the accident. The last four words of the answer 'to pay for everything' would lead us to conclude that no other inference could logically be drawn therefrom and would constitute such an acknowledgment of responsibility and declaration against interest. This being true, such evidence was admissible.''

Coming to the instant case, there seems but a play of words in attempting to differentiate between the language here used and the language of the cited case. To say ''I have insurance to pay for everything'' or to say ''my insurance company will take care of you'' are phrases of identical meaning.

The statement assailed here as prejudicial fits with the statement before the court in *Harju* v. *Market Street Ry. Co.*, 114 Cal. App. 138 [299 Pac. 788, 789]. In that case the insured had stated that the accident was his own fault and that he was fully insured. The court again announced the rule of law as follows: '' . . . where a defendant makes a statement which may be fairly construed as an admission or acknowledgment of responsibility and as part of such statement makes reference to the fact that he carries insurance, the entire statement may be admissible.'' Applying this to the case at bar we find the entire claim of plaintiff to have been that defendant was driving at an excessive speed and without lights, after dark. The statement of defendant that he did not see the boy until he hit him could reasonably be construed as an admission that defendant was guilty of either or both of the negligent acts. Defendant expressed sorrow. While our language is elastic enough to preclude an implied admission of guilt by an expression of sorrow, yet, on the other hand, its elasticity does permit such a construction. We conclude that the showing made is not sufficient to warrant the setting aside of the judgment or its reversal.

We have noted the record hereinbefore. Appellant in the court below seemed quite anxious to thereafter open up the entire question of insurance and if the jury got the impression that defendant had insurance this idea was certainly most strongly impressed upon its mind by appellant. He cannot now claim, on appeal, that the reaction was dis-

appointing. The argument between counsel and the great stir that was caused by the mention of the word insurance did, as counsel states it, "ring the bell" and counsel is also correct perhaps in the claim that it cannot be unrung. But it cannot but be admitted that appellant himself gave the rope a few hard jerks to complete the work. We mention this fact for the sole reason that on a subsequent occasion, but a few minutes after the argument, another witness referred to the fact of the insurance company doctor visiting the injured boy. After what had transpired we attach no importance to this.

This question of a reference to the fact of a defendant carrying insurance has been before the courts on many occasions; sufficient, it would be surmised, to have established a definite rule. Yet no hard-and-fast rule has been announced. A fair conclusion, from a *résumé* of the cases, would be to class such a reference under the head of misconduct of counsel. It might be conceded that where it is obvious or fairly deducible that the sole purpose was to impress that fact of insurance on the minds of the jury, for no other reason than to create a prejudice, then a reversal will follow. But where the reference, as indicated in the cited cases, is merely incidental, misconduct will not be found. And it would seem a fair corollary of the rule that where the point is debatable and offers an open field for legitimate argument, a reviewing court should not arbitrarily undo the results of a trial had under the supervision of the trial judge, whose opportunity of approximating the situation was in the first instance, and who had refused a new trial.

Lastly, appellant contends that the trial court was in error when it refused certain instructions offered by him. Only two instructions are involved and one of these, it is conceded, was to all intents substantially given in another form. While the concession noted is not absolute, yet no serious error is claimed and we find none. The instruction refused, out of which the serious error is alleged to have occurred, reads as follows: "I instruct you that defendant was under no duty to drive his automobile so as to protect persons who might suddenly run out into the street and into the path of his automobile unless and until he had warning that such person might suddenly run out into the street."

Before discussion we might state that the record is somewhat scant on the subject of instructions given and refused. We deem it needless to repeat, again and again, that it is incumbent on an appellant to show the error he complains of and likewise to show wherein substantial rights were affected. Our attention is not directed to what other instructions, if any, were given or whether or not the subject was elsewhere fully covered. That alone would be sufficient to demand an affirmance. But the quoted instruction does not accurately state the law. Doubtless it was intended to convey the thought that one driving a motor vehicle was not chargeable with the duty of anticipating negligence on the part of another and that the motorist has the right to assume that persons will not rush blindly out in the street between intersections. However, one of the issues in the instant case was lights on the car, plaintiff contending that there were none. The purpose of lights, at least one purpose, necessarily, is to protect persons at or on any part of the street or highway. To state that a motorist is under no duty at all to protect one who might run out into the street is putting it a trifle too broad. Speed laws are based primarily on the notion of a public user of streets, anticipating both a careful and a negligent use of the street. There would be no sense or reason in providing for different rates of lawful speed as between business, residence and open districts if the law were as loose as the instruction might lead a jury to infer. We find that the jury was elsewhere fully and fairly instructed.

Judgment affirmed.

Cashin, J., and Knight, Acting P. J., concurred.

[A petition for a rehearing of this cause was denied by the District Court of Appeal on February 24, 1933.