[Civ. No. 3006.   Fourth Dist.   May 25, 1942.]

HARRY E. BENNETT, Respondent, v. FLOYD B. CHAND-
LER et al., Appellants.

C. Ray Robinson, Ray W. Hays, Wm. M. Miles and Willard B. Treadwell for Appellants.

L. M. Linneman and Rae B. Carter for Respondent.

GRIFFIN, J.—This action involves an injury occurring to plaintiff and respondent occasioned as a result of a collision between a Chevrolet coupé and a Chevrolet truck (a tractor-semi-trailer type).

The testimony of respondent Bennett shows that on December 18, 1939, he left San Francisco for Madera with one Donahue, in Donahue's car, at about 5 o'clock p. m., to visit Donahue's wife who lived in that city. Originally Donahue was driving the car. Bennett later drove. As they left Gilroy, Donahue drove due to the fact that he was more familiar with that particular road. According to his testimony he, Bennett, sat beside Donahue and due to the fact that a cold draft came under the right door which was sprung, Bennett chose to sit in the middle of the seat close to the driver to avoid the draft; as they thus proceeded easterly from Los Banos on highway 152 he, Bennett, was "dozing" a little; that they had been traveling about 40 to 45 miles per hour but due to spots of fog they slowed down occasionally to 25 or 30 miles per hour; that he was awakened when Donahue mentioned something about lights; that he "sat up straight to see what he (Donahue) had commented on"; that the fog

had cleared and he noticed the paved portion of the highway was equally divided by a white center line; that the Donahue car was well on the south or right side of the line at the time; that the lights on the coupé were burning and that about 110 or 112 feet in front of him he noticed the Chevrolet truck and trailer; that the truck was then angled diagonally across the road, i. e., the tractor part was completely on the south half of the road and the trailer was partly on the north half; that Donahue "swung" his car to his left or to the north half of the highway to avoid striking the truck which occupied practically all of the south half; that the pavement was 21 feet wide with 6-foot shoulders; that the right side of the coupé collided with the north side of the truck about 9 feet back of the driver's cab; that he "cringed away from the side of the impact" toward the driver Donahue; that he did not remember anything thereafter for two days until he gained consciousness in the hospital. He maintained at all times that he was not driving the car after it left Gilroy and that Donahue was driving.

Practically the entire right side of the coupé was caved in and demolished. The steering wheel was both bent and broken. Blood spots were found on the back cushion almost directly behind the driver's seat. Donahue was killed in the accident and died immediately. The doctor who examined Donahue and also signed the death certificate testified that he "had obviously had a crushed chest" because "pressure upon it very definitely showed a cave-in, and you could easily compress his chest and notice a cracking"; that he completely examined Bennett and found no scarring or bruising of any kind on his chest or body; that he had only severe head injuries and injury to his hand.

■ Bennett testified on direct examination that about noon on December 18th he drank two pint bottles of beer in San Francisco; that at 4 p. m. he had two "Scotch and soda's" before he ate; that he felt no effects from them; that he met Donahue and that on the road they stopped at Palo Alto; that Donahue had coffee and he had a bottle of beer; that at Gilroy they each had a bottle of beer; that at Los Banos they stopped and each had only coffee and hamburgers. On cross-examination Bennett was asked: "Q. What time did you have these first drinks in San Francisco, Mr. Bennett? . . . A. . . . Approximately 12:30." Counsel for appellants then asked him where he had been the night before and if he had anything to drink within twelve hours prior to the time he took the

two bottles of beer in San Francisco. The trial court sustained an objection to this question on the ground that it was not material or proper cross-examination in the absence of any showing that "drinking will effect a person for 12 hours:" Appellants assigned this ruling as erroneous and prejudicial. We see no particular merit to this argument. The question first propounded and respondent's answer thereto rather indicates it was the first drink that Bennett had that day. Appellants made no offer of proof that he had drinks before that time. None of the witnesses who saw respondent at the time of the accident or thereafter testified that he was under the influence of liquor or that they even smelled liquor upon his breath. While a broader latitude should have been allowed in the cross-examination, no offer of proof was made and it has not been shown how appellants would be prejudiced by the ruling. After the reception of the evidence above related the court denied a motion for nonsuit. Considering respondent's evidence, the ruling was proper.

Appellant Chandler then testified that he was agent of appellant Smith; that he was driving the truck and trailer westerly on highway 152 at about 30 miles per hour; that the truck weighed 15 tons loaded; that the over-all length of the truck was 40 feet and that it carried 18 wheels; that about 1½ miles west of the Dos Palos "Y" the fog lifted; that "I straightened around the curve beyond the 'Y' and went for a short ways, and I seen a pair of headlights approaching and they were quite a considerable distance from me. They were on their own side of the highway, on the south lane. As we neared, kept coming together, closer together, I imagine 200 or 250 feet apart, this approaching car suddenly swerved to the left, straight across the highway at approximately a 45-degree angle. . . . Well, I seen that I could not avoid a collision so I cut my outfit to the left . . . and about that time we came together. . . . He was so close to me I would have run completely over the car if I had not tried to avoid hitting him"; that appellants' "outfit turned over" south of the highway; that respondent's car was upright about 4 feet north of the center line of the highway; that he looked in the Donahue car and saw "they were drove back into the seat with just their heads and shoulders lying on the seat. . . . The rest of them were down on the floor board . . . with their heads and shoulders on the flat of the seat . . . their position in the car was as if they were sitting there, never moved, one on one

side of the car and one on the other''; that Bennett was on the left side under the steering wheel; that the older man (Donahue) was on the right-hand side of the seat. Seven other witnesses testified similarly as to the position of the men in the Donahue car after the accident and that Bennett was removed from under the steering wheel from the left side of the car and that his trousers or foot was caught in the brake or clutch; that Donahue was dead and his body was removed from the right side of the car. Upon this evidence the jury returned a verdict for $7,000 in favor of respondent Bennett. No question is raised as to the amount of the damages.

Appellants moved for judgment notwithstanding the verdict and for a new trial. Both were argued fully and were denied. It is now vehemently claimed by appellants that ''the testimony of the plaintiff falls into the category of either perjury or the testimony of a person whose memory or mentality was so affected by the use of intoxicating liquor that he did not know what he was doing and, accordingly, his testimony, which is obviously false, is to be so judged'' and that the appellate court should so determine.

The trial court fully instructed the jury upon the rules of law applicable if it should find that Bennett was not driving the car and the rules of law applicable if it should find that he was driving it, which included the contributory negligence, proximate cause and sudden peril rules offered by appellants. It refused to give a special interrogatory directed to the jury to ascertain if Bennett was or was not driving the car. Appellants assigned this refusal as error. The refusal to submit the special interrogatory under the circumstances here related was discretionary. (*Mayfield* v. *Fidelity etc. Co.*, 16 Cal. App. (2d) 611 [61 P. (2d) 83].) No abuse of discretion appears. (*Olmstead* v. *Dauphiny*, 104 Cal. 635 [38 Pac. 505].) The jury was therefore presented with the testimony of respondent and the circumstances tending to show that Donahue was driving the car and the circumstances shown by the evidence tending to indicate, by the position of the occupants of the car after the accident, that Bennett was driving it. The number of witnesses testifying as to the position of the occupants of the car after the accident might well lead one to believe that Bennett was driving the car. A finding to this effect would have been substantially supported, but it cannot be said as a matter of law that a contrary finding would not also be supported by the evidence and circumstances here

related. At most it created a substantial conflict, first, for the determination of the jury, and second, for the determination of the trial judge on a motion for new trial. The weight to be given the testimony was a matter directed solely to them. The trial judge's reaction to appellants' evidence was reflected in his remarks to counsel for appellants when the motion for new trial was heard. He said, after Mr. Robinson stated: ". . . in my opinion there was a man here (Bennett) who was obviously lying . . . THE COURT (interrupting): You have said that so often, I have to disagree with you there . . . frankly, Mr. Robinson, I don't pay much attention to parrot witnesses if I may call it that. I don't pay much attention to a long string of witnesses who say the same thing down the line. It has no probative value." ▮ Regardless of the position of the parties in the car at the time of the collision, we are not unmindful that it is within the realm of possibility that persons seated in a car may change positions under a terrific force of impact. What actually occurred in the instant case was a question of fact for the determination of the jury. (*Chichester* v. *Seymour,* 28 Cal. App. (2d) 696 [83 P. (2d) 301]; *Fox* v. *Sherwood,* 7 Cal. App. (2d) 265 [45 P. (2d) 1026]; *Bixby* v. *Pickwick Stage Co.,* 131 Cal. App. 739 [21 P. (2d) 972].)

This court had before it for consideration in *Donato* v. *Lopopolo,* 20 Cal. App. (2d) 409 [66 P. (2d) 1256], a conflict in the evidence as to who was driving the car at the time of the accident. We there held, as we must here, that we are not concerned with mere conflicts in evidence. Such conflicts are within the sole province of the trier of fact for determination and we must not disturb such finding when it is supported by substantial and material evidence.

When the trial judge has passed on a motion for new trial and fully considered the conflicts in and the weight to be given the testimony, it has an appealing force to an appellate court. ▮ Where the testimony, in the light of the undisputed facts, is so inherently improbable and impossible of belief as to, in effect, constitute no evidence at all, the rule that the amount of credit to be given to the positive testimony of any witness is solely a question for the trial tribunal, does not apply. (*De Arellanes* v. *Arellanes,* 151 Cal. 443 [90 Pac. 1059].) ▮ Undoubtedly, an appellate court in reviewing the evidence is bound to exercise its intelligence and in doing so must recog-

nize that certain facts are controlled by immutable physical laws. It cannot permit a verdict to change such facts. When circumstances show that the story told by a litigant and his witnesses cannot by any possibility be true, or when their testimony is inherently impossible, the appellate court will not hesitate to reverse the judgment to the end that the cause may again be submitted to the determination of a jury or trial judge. On the other hand, it is the duty of an appellate court to exercise great care in applying the tests of common sense and common knowledge of physical laws to a given set of facts. Experience and observation teach that strange things sometimes happen in the world of physical phenomena and accidents sometimes appear to happen in a manner unaccountable. For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witnesses seem improbable will not justify a reversal by an appellate tribunal on the ground that the verdict is contrary to the evidence. (*Austin* v. *Newton*, 46 Cal. App. 493 [189 Pac. 471].) ▉ Even assuming that the jury determined that Bennett was driving the car, which corresponds with our view of the weight of the evidence, we are then still presented with the additional question whether, from the evidence, we must hold as a matter of law that he was guilty of contributory negligence precluding a recovery. With the apparent right of the jury to believe or disbelieve any part of the testimony, we are unable to say that he was guilty of such acts as constitute contributory negligence as a matter of law barring recovery. This was a question for the jury to determine, which was submitted to them under proper instructions on that subject, which instructions were submitted by appellants.

The most important question presented, under the facts of this case, involves the giving of an instruction in the language of section 525 of the Vehicle Code relating to the necessity of driving on the right half of and as close as practicable to the right-hand curb or edge of the roadway, which instruction was followed by the further instruction that ". . . it is negligence as a matter of law to violate the provision of law just read to you and therefore, if you believe from the evidence that the defendant Floyd B. Chandler negligently drove his motor truck on the southerly or left-hand side of the road while traveling in a westerly direction in violation of the sec-

tion just read to you, and that the plaintiff was himself in the exercise of reasonable care, then it is your duty to return a verdict in favor of the plaintiff and against the defendants."

It has been held that this section was enacted for the benefit of motorists traveling in the same direction. (*Arundel* v. *Turk*, 6 Cal. App. (2d) 162 [44 P. (2d) 383]; *Polk* v. *Weinstein*, 12 Cal. App. (2d) 360 [55 P. (2d) 588]; *Lewis* v. *Western Truck Line*, 44 Cal. App. (2d) 455, at 468 [112 P. (2d) 747].)

■ It is further pointed out that the instruction lacks the essential fundamental elements of proximate cause. (19 Cal. Jur. 636, § 67.) This latter portion, however, may be and is cured by the fact that the trial court in another instruction correctly stated the general rule of proximate cause and specifically gave appellants' instructions to the effect that the burden of proof was upon respondent to prove by a preponderance of the evidence that defendants were negligent and that such negligence was a proximate cause. This instruction was followed by a general instruction that the jury were not to "select a single instruction or a portion of any instruction, and base your verdict thereon. All of the instructions which the court has given you or will give you in this matter, must be considered by you as a whole, and each in its relation to the other, all in determining any issue in this case."

■ It was error to give the instruction based upon section 525 of the Vehicle Code as that section was not, under the authorities, applicable to the case before us. This instruction was followed, however, by reading section 527 of the Vehicle Code relating to vehicles proceeding in opposite directions.

The all-important question then arises whether or not the error was such as would compel a reversal notwithstanding section 4, article VI of the Constitution. In the case of *Lewis* v. *Western Truck Line, supra,* we were confronted with this same question. In that case the court erroneously gave an instruction based upon section 525 of the Vehicle Code which was followed by an instruction based upon section 527 of that code. We there held that the giving of the instruction in the language of section 525 of the Vehicle Code under the evidence of that case, which also presented a close question of the negligence of the defendant, was not prejudicial. We cited many cases in support of this conclusion. We must therefore conclude in the instant case that the giving of the erroneous instruction was not prejudicial.

■ Lastly, appellants contend that the court erred in refusing to give certain offered instructions. Among them was one which read: "In the questions asked of you concerning your qualifications to sit as a juror, some mention was made of the matter of insurance. I instruct you that you cannot bring in a verdict against any insurance company. I further instruct you that no insurance company is a party to this action." On *voir dire* counsel for respondent asked the jurors certain questions about their interest, if any, in insurance companies. The general question propounded to the jurors and their answer was: "May I ask you . . . whether or not you or any member of your immediate family own any stocks, bonds or other evidence of indebtedness issued by any company whose business in whole or in part is that of insuring motor vehicles for negligence? A. We have not." Counsel for appellants admit that "it is proper to ask prospective jurors on their *voir dire* examination whether they are stockholders, etc., in any insurance company writing public liability insurance and whether the members of their families are members or work for such companies," but contend that in spite of the propriety of these questions, it is incumbent on the trial court and it is the trial court's duty to instruct the jury that no insurance company is a party to the action where the trial court is requested to give such instruction. (Citing *Dermer* v. *Pistoresi,* 109 Cal. App. 310 [293 Pac. 78] ; *Elmore* v. *County of Lassen,* 10 Cal. App. (2d) 229, 234 [51 P. (2d) 481] ; *Nichols* v. *Nelson,* 80 Cal. App. 590, 596 [252 Pac. 739] ; *Girard* v. *Irvine,* 97 Cal. App. 377 [275 Pac. 840].)

The cases cited by appellants are not authority for their claim. In each of the cited cases the trial court gave the instruction requested after certain claimed improper questions were propounded which subtly intimated the existence of insurance in the case. It was there held that the giving of the instruction was proper. In the instant case there was no showing that the questions were improper or that appellants were entitled to an instruction that no insurance company was a party to the action. (*Chandler* v. *Benafel,* 3 Cal. App. (2d) 368 [39 P. (2d) 890].) Appellants must show that they were prejudiced by the omission to give any instruction. (*Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal. App. (2d) 556 [90 P. (2d) 371] ; *Wallace* v. *King,* 27 Cal. App. (2d) 174, 181 [80 P. (2d) 523].) If it could be held that the questions propounded were improper, a different conclusion might result. (56 A.L.R. 1540, 1543.)

We have examined the other claimed errors in refusing to give other instructions offered and have fully considered the other points presented. They are without merit.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied June 23, 1942, and appellants' petition for a hearing by the Supreme Court was denied July 23, 1942.