[Civ. No. 7315.   Third Dist.   Apr. 24, 1947.]

LOUELLA KROPLIN, Respondent, v. JOHN R. HUSTON, Appellant.

Coombs and Dunlap for Appellant.

Daniel K. York and Francis H. Frisch for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $12,500, which was rendered against him pursuant to the verdict of a jury, in a suit for personal injuries sustained by plaintiff, as the result of an automobile, in which she was riding as a guest, colliding with a tree by the side of the highway, when the defendant lost control of the vehicle on account of alleged intoxication and wilful misconduct. A motion for new trial was denied.

Neither the amount of the award nor the sufficiency of the evidence to support the judgment is challenged. The defendant, however, seeks a reversal of the judgment on the grounds that plaintiff's attorney was guilty of prejudicial misconduct in adducing evidence that the defendant was insured against automobile casualties, that the court erred in giving and refusing to give instructions to the jury, and that plaintiff was permitted to amend her complaint during the trial to conform to the evidence, so as to charge the defendant with intoxication as the proximate cause of the accident.

The plaintiff was fifty-six years of age. She is the mother of three adult children. She lived in Napa with her son William Kroplin. She spent the afternoon and evening of August 13, 1944, at the home of her friend, Mrs. Cox, in Napa. About 10:30 p. m. of that day Mrs. Kroplin prepared to return home. For that purpose she was about to telephone for a cab, when Mrs. Cox suggested that her neighbor, John Huston, would drive her home in his automobile. Mrs. Kroplin was not well acquainted with Mr. Huston, although he had once previously driven her home. He had just returned from a visit to the home of a friend in Napa County. Mrs. Cox called to him and asked him to take Mrs. Kroplin home. He soon appeared and consented to do so. Plaintiff accompanied him as a guest passenger. As they drove from the Cox premises in his Ford sedan, they met Olin Scott, a friend of Mr. Huston, but a stranger to Mrs. Kroplin. The defendant told him to get in and ride with them; that he was just taking Mrs. Kroplin home and would return in a few minutes. All three persons sat on the front seat. Mrs. Kroplin sat between the men. Huston drove the car.

There is evidence that Mr. Huston had been drinking and that he was then intoxicated. Mr. Scott testified that he, also, was then pretty drunk. Mrs. Kroplin testified that she had not observed and did not know that either of the men was

under the influence of liquor. Mr. Huston was evidently in a great hurry and drove very rapidly. Both Mrs. Kroplin and Mr. Scott repeatedly warned the defendant not to drive so fast. As their automobile approached the intersection of Pueblo and Solano Avenues, it sideswiped the rear fender of an approaching machine. The defendant lost control of his vehicle and after the car traveled fifty or seventy-five feet further, it crashed into a eucalyptus tree by the side of the highway with such force as to imbed a front lamp in the tree. Huston was slightly injured, and Mrs. Kroplin sustained a fractured pelvis and other serious injuries. Donald Boerger, who drove the car which had been previously hit by Huston's machine, immediately returned to the scene of the accident. He testified that, from the appearance and conduct of Mr. Huston, "I knew he was under the influence of liquor." A traffic officer, who soon arrived at the scene of the accident, testified that he smelled alcohol on Huston's breath, and that he appeared to be intoxicated. An ambulance conveyed the plaintiff to a hospital where she was treated. She remained in a hospital for about eight months. Two other witnesses, who saw Huston at the hospital immediately after the accident, also testified that he then appeared to be intoxicated.

The complaint originally alleged that plaintiff's injuries were sustained as the result of wilful misconduct of the defendant in the operation of his machine. During the trial, after evidence of defendant's intoxication developed, on motion of plaintiff, over the objection of the defendant, she was permitted to file an amendment to her complaint charging the defendant with intoxication as the proximate cause of the accident, in conformity with the provisions of section 403 of the Vehicle Code. That amendment was duly filed and its allegations were deemed to have been denied by the defendant. The trial was completed, and the jury returned a verdict of $12,500 in favor of the plaintiff. A motion for new trial was denied. From the judgment the defendant has appealed.

■ It was not prejudicial error for plaintiff's attorney to ask prospective jurors on the *voir dire*, whether they owned stock or were interested financially in the Pacific Indemnity Insurance Company, or any other insurance company. There is no evidence of bad faith in propounding those questions. There was no objection to the questions at the time of trial. A party to an action is entitled to ask prospective jurors, in good faith, whether they are stockholders or financially inter-

ested in any casualty insurance company for the purpose of discovering the presence of bias or prejudice, if any exists, in the minds of the jurors, which would disqualify them as fair and impartial jurors. (*Dermer* v. *Pistoresi*, 109 Cal.App. 310 [293 P. 78]; *Levens* v. *Stocco*, 5 Cal.App.2d 693 [43 P.2d 357]; *Girard* v. *Irvine*, 97 Cal.App. 377, 382 [275 P. 840]; *Bennett* v. *Chandler*, 52 Cal.App.2d 255, 264 [126 P.2d 173]; 11 So.Cal.L.Rev. p. 419; 15 Cal.Jur. 421, § 92.) There is nothing in the general questions propounded to the jurors on the *voir dire* to indicate bad faith on the part of plaintiff's counsel. That assignment of error is without merit.

Likewise, we are of the opinion it was not prejudicial misconduct for plaintiff's attorney to ask a witness in good faith, for the purpose of impeaching the defendant, who had previously denied the admission, whether the defendant had not told him immediately after the accident occurred, that "he was at fault"; that he was insured and would "take care of" plaintiff's expenses incurred as a result of the accident. When the defendant was called and examined as a witness under section 2055 of the Code of Civil Procedure, he was asked if he had not previously admitted that the casualty was his fault; that he was fully insured and that he would pay the expenses, to which he replied, without objection, "I told her I had insurance," but the witness denied that he admitted the accident was his fault or that he told her he would pay the expenses. Regarding that conversation with the defendant, which Dora Webster, a daughter of plaintiff, testified occurred soon after the accident, this colloquy appears in the record:

"Q. At that time you had a conversation with Mr. Huston with reference to the accident? A. Yes, I did. Q. Would you please tell us what you said and what Mr. Huston said at that time? A. Yes. . . . I looked him up to find out about the accident, and he asked me to come in, and I went in and he said . . . he felt sorry about the whole thing, but it was his fault and that he would take care of everything."

It appears that the witness, Dora Webster, later went with her brother Elmer to the defendant's home to inquire about the payment of expenses, regarding which conversation the following testimony appears:

"Q. And what was the conversation at that time; what did you say to him and what did he say to you? A. Well, he said the same thing over again, and then he said that he had

insurance that would take care of everything, that we didn't have to worry.''

To that statement the attorney for the defendant said, ''Just a moment. . . . I will ask the Court to instruct the jury on any insurance.'' There was no motion to strike out the answer, or any portion of it. But the court very clearly and definitely instructed the jury it could not consider the circumstance of insurance for any purpose at all.

It appears that two days after the last mentioned conversation took place, Elmer Kroplin and his brother William again visited the defendant's home and had another talk with him about paying expenses of their mother's injuries. Regarding that conference the following occurred:

''Q. What was said at that time by you or what was said by Mr. Huston or . . . by your brother Bill with regard to this accident? A. Well, we were interested in finding out about expenses at that time.''

Defendant's attorney objected on the ground that it was not material. The court replied, ''No; not what you were interested in, but what was said,'' to which the witness replied, ''So Mr. Huston said that he had a certain piece of paper which would take care of certain things. . . . What was said by Mr. Huston was—— (Interruption).'' Defendant's counsel then said ''Go ahead.'' The witness proceeded to say, ''So we asked to see it; and he fumbled around looking for it, and then he told us that there was a certain Mr. Davis who was—— Mr. Frisch: (Interrupting) Q. Did he identify the kind of paper he was looking for? A. Yes, he did. Q. What kind of a piece of paper did he say it was? A. Insurance policy.'' Defendant's attorney assigned the foregoing as misconduct and asked the court to instruct the jury to disregard it. The court again clearly and definitely instructed the jury to disregard the evidence of insurance. Moreover, in the final instructions which were read by the judge to the jury, it was again charged to disregard the evidence of insurance, in the following language:

''. . . In the course of the trial, the Court struck testimony relative to insurance from the record and cautioned you to disregard it. Whether or not any party is insured has nothing at all to do with any of the questions in this case which you are to decide. You are reminded that no insurance company is a party to this action. . . . Under your oath as jurors, you are required to refrain from any speculation, consideration or discussion about insurance.''

We do not approve the preceding quoted inquiry by plaintiff's attorney regarding the nature of the "paper" which the witness said the defendant was hunting for, nor the answer which it elicited that it was an "insurance policy." Counsel appeared to be too eager to identify the exact character of that document. It was immaterial and improper, as the court properly said. But, under the circumstances of this case, it was not reversible error, for the reasons that it was merely cumulative and the court repeatedly instructed the jury to disregard that evidence. The appellate court said in *Girard* v. *Irvine, supra,* at page 382, regarding the same issue under similar circumstances, in which a judgment for plaintiffs was affirmed:

". . . In the present case the negligence of the defendant was not in our opinion a close question, and we cannot say that the questions asked were necessarily prejudicial; nor is it clear from the record that they were not asked in good faith.

"In denying defendant's motion for a new trial based upon the grounds, among others, of the misconduct of plaintiff's counsel, the trial court impliedly determined that no prejudice was suffered by the defendant, and its conclusion cannot be disturbed unless, under all the circumstances, it was plainly wrong (*La Fargue* v. *United Railroads,* 183 Cal. 720 [192 P. 538]). This cannot be said here."

We think the objectionable evidence of insurance, last mentioned, was not prejudicial because the fact of the existence of defendant's insurance was already properly before the jury, without objection, and the jury was repeatedly warned to disregard that evidence. Also the challenged evidence was a part of a declaration against interest, repeatedly made by the defendant, in which he admitted that the accident was due to his fault, and that he was insured and would pay the expenses of the injuries sustained by the plaintiff. It has been frequently held that the declaration against interest of a defendant in an automobile casualty case is competent and admissible, even though it may incidentally reveal the fact that he is insured. (*McPhee* v. *Lavin,* 183 Cal. 264, 269 [191 P. 23]; *Dullanty* v. *Smith,* 203 Cal. 621, 624 [265 P. 814]; *North* v. *Vinton,* 17 Cal.App.2d 214, 219 [61 P.2d 950]; *Walter* v. *England,* 133 Cal.App. 676, 688 [24 P.2d 930]; *Noble* v. *Bacon,* 129 Cal.App. 177, 183 [18 P.2d 699]; *Handley* v. *Lombardi,* 122 Cal.App. 22, 33 [9 P.2d 867]; 11 So.Cal.L.Rev. p. 421.)

■ The court did not abuse its discretion in granting plaintiff's motion to amend the complaint, in conformity with the proof adduced, so as to allege that the injuries sustained by plaintiff were the result of defendant's intoxication, in accordance with the provisions of section 403 of the Vehicle Code. The original complaint merely charged the defendant with wilful misconduct. Evidence of defendant's intoxication developed on the first day of the trial upon his examination as a witness under section 2055 of the Code of Civil Procedure. That evidence was adduced without objection. It was followed by other and more definite evidence of intoxication. On the second day of trial plaintiff moved to amend her complaint on that ground, having previously given notice in open court that she would do so. The motion was granted and the cause was continued to the following Monday to enable the defendant to rebut that issue. The court stated that the allegation of intoxication would be deemed to be denied by defendant's answer. There was adequate evidence to support the issue of intoxication of the defendant. It does not appear that the defendant was prejudiced by that amendment.

■ The rule is well established that the trial court has a sound discretion to allow amendments of pleadings during the trial, in furtherance of justice and to dispose of the case on its merits, when the adverse party is not prejudiced thereby. It has been held the court should be liberal in allowing such amendments. ■ The fact that the new matter may have been known to the applicant at the time of filing his original pleading is not sufficient ground for denying the right to amend. (*Tolbard* v. *Cline,* 180 Cal. 240, 245 [180 P. 610]; *McDougald* v. *Hulet,* 132 Cal. 154 [64 P. 278]; *Isaacson* v. *Union Trust Co.,* 95 Cal.App. 633, 638 [273 P. 119]; 21 Cal.Jur. 191, § 133.)

■ The questions as to whether the operator of an automobile was intoxicated at the time of an accident, whether his intoxication was the proximate cause of the injuries received by the guest, and whether she had knowledge, or by the exercise of reasonable care should have known that the driver was intoxicated, are problems for the determination of the jury with which conclusion a reviewing court may not interfere when there is substantial evidence to support the findings, as there is in the present case. (*Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal.2d 480, 507 [55 P.2d 870]; *McMahon* v. *Schindler,* 38 Cal.App.2d 642 [102 P.2d 378];

*Tomlinson* v. *Kiramidjian,* 133 Cal.App. 418 [24 P.2d 559] ; Ogilvie's Cal. Veh. Code, p. 183, § 403.)

In the McMahon case, *supra,* judgment for plaintiff, who was injured while riding as a guest in an automobile driven by an intoxicated driver, was affirmed, and a hearing was denied by the Supreme Court. In that case plaintiff was employed as hostess in a night club. She accepted an invitation by the owner of the machine to.drive her home. Bernard Schindler accompanied them and drove the car. Both plaintiff and Schindler drank intoxicating liquor that evening. Plaintiff saw Schindler drink four or five whiskey toddies at a night club where they stopped for half an hour on their way home. After resuming their journey Schindler drove the car at a speed of 50 or 55 miles an hour and in such a manner that it swerved in its course. The plaintiff protested against the excessive speed and warned him "not to drive so fast." Finally she realized that he must be drunk and told him to stop the car. But almost immediately the machine crashed into a telephone pole and she was injured. She brought suit charging wilful misconduct and intoxication of the driver as the cause of the accident. Defendants pleaded contributory negligence of plaintiff as a bar to her right of recovery. A jury rendered judgment in plaintiff's favor. The court held that in spite of the fact that plaintiff knew Schindler had been drinking liquor, that he drove the car at an excessive rate of speed, and that she also had taken three drinks of intoxicating liquor that evening, she was not deprived of the right to recover damages under section 403 of the Vehicle Code. It was held that the questions of intoxication of the driver, plaintiff's knowledge, actual or imputed, of his condition of sobriety, whether his intoxication was the proximate cause of the accident, and plaintiff's alleged contributory negligence, were all problems for the determination of the jury, with which conclusions the reviewing court was not permitted to interfere.

In the present case we are of the opinion the trial court properly refused defendant's proposed instruction which stated that even though the jury determined that defendant's intoxication was the proximate cause of the injuries sustained by plaintiff, if it also found that plaintiff "observed or should, in the exercise of ordinary care have observed, that Defendant was intoxicated, and, nevertheless, voluntarily continued to ride with him," she was guilty of contributory negligence which would bar her recovery of judgment.

There is no evidence that plaintiff knew the defendant was intoxicated. Nor is there any evidence that would show that, as a reasonable person, she should have known that he was intoxicated. The evidence is just the contrary. On her examination in chief as a witness, she was not asked whether she observed his condition as to sobriety. She did testify that he drove so fast that she was frightened, and that she warned him three or four times against driving so fast. But it was not even intimated that she thought his reckless driving was the result of intoxication. All of the evidence of his intoxication came from other witnesses who saw him after the accident occurred. She was not well acquainted with Mr. Huston. There is no evidence that she had any information that he was addicted to the use of intoxicating liquor. She had not seen him on the day of the accident until immediately before they entered his car to go to her home. Both Mrs. Cox and plaintiff testified positively that neither of the ladies had drunk liquor that day. Mrs. Kroplin said that she never drank liquor. As a part of defendant's case, plaintiff was recalled and examined under section 2055 of the Code of Civil Procedure upon a deposition which she had formerly made, in which it appears she was asked if Mr. Huston had been drinking. She replied, "I couldn't say, because he came in, he wasn't with us, . . . he just came in and I had not seen Mr. Huston" until he came to drive her home. Upon direct inquiry she said, in effect, that he did not appear to be intoxicated. She testified that "He appeared—— . . . because he seemed all right. He opened the door for me to get in the car. *He appeared all right to me.*"

We think there was no substantial evidence in the case upon which to base the challenged instruction which is founded on the supposition that plaintiff knew the defendant was intoxicated, or that, as a reasonable person, she should have known that he was under the influence of liquor. The court, therefore, did not err in refusing to give that instruction to the jury.

■ Moreover, that same proposed instruction was otherwise objectionable because it charged the jury that if they believed that plaintiff "through her drinking, had her faculties so dulled that she was unable to recognize intoxication in the Defendant and that she would have recognized such intoxication had she been sober," she would be guilty of contributory negligence which would preclude her from recovering damages for her injuries. There is no evidence in the

record that the plaintiff had been drinking liquor. The uncontradicted evidence is that she had not been drinking. Both she and Mrs. Cox testified they had not been drinking. Plaintiff said that she never drank intoxicating liquor. There is no evidence to the contrary. The rule is firmly established that it is not error to refuse to give a proposed instruction when there is no evidence to support the theory upon which it is drawn. (*Davenport* v. *Stratton*, 24 Cal.2d 232, 254 [149 P.2d 4]; *Shepherd* v. *Jones*, 71 Cal. 223 [16 P. 711]; *Chapman* v. *Pacific Electric Ry. Co.*, 85 Cal.App. 69, 74 [258 P. 1006]; 24 Cal.Jur. 804, § 78.) In the Davenport case, *supra*, it is said:

"Even though an instruction is couched in proper language it is improper, if it finds no support in the evidence, and the giving of it constitutes prejudicial error if it is calculated to mislead the jury."

It is true that upon cross-examination of Mrs. Cox, she testified positively that neither she nor Mrs. Kroplin had been drinking liquor on the day of the accident. For the purpose of impeaching her in that regard the defendant offered a previous statement signed by Mrs. Cox, which was written by a representative of an insurance company in her home, not in the presence of the plaintiff, which he induced Mrs. Cox to sign, in which a statement appears that the ladies had taken several drinks of liquor that afternoon and that they were feeling "pretty high." Mrs. Cox emphatically declared at the trial that she made no such statement; that it was not true, and that she signed the written statement without reading it, at the request of the stranger who came to her home a day or two after the accident occurred. The statement was competent only for the purpose of impeaching the witness on the theory that she had previously made an extrajudicial admission in conflict with her testimony at the trial. It was not competent as evidence of the fact as to whether Mrs. Cox had actually been drinking liquor. It certainly was not binding on the plaintiff as an admission of her previous drinking of liquor.

The rule is almost universally recognized in all jurisdictions, including that of California, that evidence of extrajudicial statements made by a witness who is not a party to the action, are not binding as admissions of the fact in controversy, and are competent and admissible only as against the witness for impeachment purpose to discredit his testimony given at the trial. (*Albert* v. *McKay & Co.*, 174 Cal. 451 [163

P. 666]; *Lopez* v. *Wisler,* 58 Cal.App.2d 455, 462 [136 P.2d 816]; *Overton* v. *Harband,* 6 Cal.App.2d 455, 462 [44 P.2d 484]; 70 C.J. p. 1153, § 1339; 20 Am.Jur. p. 404, § 458; 133 A.L.R. 1454, n.) In the Albert case, *supra,* it is said, at page 456, that:

"When a witness is impeached by proof of prior inconsistent statements, the effect is merely to discredit him as a witness. The former statements made by him are incompetent for any other purpose. They do not constitute evidence of the truth of the facts so stated by him."

There is therefore no evidence in this case that the plaintiff had been previously drinking intoxicating liquor, and the proffered instruction was misleading and properly refused.

The foregoing instruction was the only one offered by the defendant which was refused. The defendant does not contend that the instructions which were given to the jury are erroneous, but he does assert that the court, on its own initiative, should have given other instructions more fully defining or explaining the law with respect to the defense of contributory negligence. We think not. The jury appears to have been sufficiently and fairly instructed upon the essential issues of the case. The defendant offered no other instructions on the subject of contributory negligence. The jury was instructed that the burden was on plaintiff to prove by a preponderance of the evidence that she was injured as a result of the wilful misconduct or intoxication of the defendant, and that, even if that was shown to the satisfaction of the jury, plaintiff could not recover if she was also guilty of negligence which contributed to the accident. With respect to negligence which would bar the plaintiff from recovering damages, the jury was told that it must be such as would have "actively contributed to the happening of the accident and the injuries" received. We think the failure to more fully instruct the jury on that subject is not reversible error, since no proper instruction on that subject was offered by the defendant. The jury could not have been misled by the instructions which were given. There was no miscarriage of justice.

The judgment is affirmed.

Schottky, J. pro tem., and Peek, J., concurred.