[Civ. No. 2684.   Fourth Dist.   Aug. 12, 1942.]

GUY S. MARTIN, Appellant, v. VICTOR C. McLAIN et al.,
Respondents.

Brittan & Mack, Donald G. Kendall and Kendall & Howell
for Appellant.

Henry E. Schmidt and Carlton H. Casjens for Respondents.

GRIFFIN, J.—This is an action to recover on an open book account and to foreclose a claimed equitable mortgage alleged to have been given to secure the payment of a promissory note. Plaintiff and appellant was a resident of the State of Illinois for more than 25 years and was such resident at the time this action was commenced. Since 1918 he maintained an office in the State of Missouri wherein he conducted a business of writing insurance and surety bonds and financing contractors. The appellant first met the respondent Victor C. McLain, a contractor, in 1924, and entered into a course of business with him whereby appellant furnished McLain performance bonds and financed him on construction jobs over a period of years extending to and including the year 1934. The respondents Victor C. McLain and L. M. McLain, his present wife, were residents of Illinois from 1924 until 1935. They moved to California in December, 1935, and made their permanent home at Wasco, on the real property (160 acres) the subject of this action. The defendant Maud F. McLain was the former wife of the respondent Victor C. McLain. They were divorced in 1923. The action against her was subsequently dismissed. L. M. McLain was married to Victor C. McLain in 1923. They lived together as husband and wife from said date until the commencement of this action. Victor C. McLain and Maud F. McLain entered into a contract to purchase the land here in question from Arthur and Addie Thresher on March 30, 1922. Maud F. McLain quitclaimed her interest to Victor C. McLain February 21, 1924. Victor C. McLain, on April 7, 1932, conveyed and quitclaimed all his interest in the land to L. M. McLain. The title to the land was finally acquired by L. M. McLain by deed from Louise A. Simms and Vinton D. Simms on January 29, 1935.

From 1924 until April, 1930, the respondent Victor C. McLain operated a construction business under the name of Midwest Engineering Company, a corporation. He was president, L. M. McLain was vice president and E. O. Erickson was secretary-treasurer. The Midwest Engineering Company encountered financial difficulties in April, 1930, and the corporation was abandoned at that time. Victor C. McLain continued business in his own name. In 1925 appellant began to finance some road construction jobs for McLain. This relationship developed into a running account between the parties. Appellant took assignments of moneys

due respondents on the respective jobs. He advanced funds to and on behalf of respondents and charged a substantial rate of interest for such advancements. Appellant's record of account extending from July 5, 1924, to May 1, 1937, shows substantial receipts and disbursements and indicates that on May 1, 1937, a balance was due appellant in the sum of $45,047.30.

Appellant's record shows that on May 29, 1929, the Midwest Engineering Company was indebted to him for approximately $12,550.50. He testified that money was needed to finish a road construction job known as the Pinckneyville job, and that he wrote a letter to Mr. McLain on that date, in which he stated:

"Have just had a talk with Mr. Locatel at the bank and while he has not definitely agreed to take care of us, I believe he will see us through on this Pinckneyville job. It might be well for you to make me an assignment of estimates on the job and also of your California land, which I believe we had up with him once before and he knows something about it.

"If you will get these to me right away, I will make all necessary arrangements down there. Am inclosing note, which I thought perhaps would be best to make for $25000.00 and an assignment of estimates."

On May 31, 1929, Mr. McLain wrote to appellant, returning the promissory note for $25,000 signed by himself individually and the Midwest Engineering Company, together with an assignment of the real estate contract dated March 30, 1922, between himself, his then wife, and Arthur and Addie Thresher, and the original contract of purchase. The letter returning these documents reads in part as follows:

"I am handing you herewith the return of the note, $25000.00, you sent me for signing together with a memorandum on 2 sheets, one for each of us to be signed by us, so as to leave the track behind us of just what we were doing. One of them you may return to me after it is signed.

"I am also handing you the signed statement of assignment, which you forwarded, for your use.

"I am also handing you the contract for deed on the California property, together with an assignment of interests, to be attached to it or remain folded with it as I am handing it to you, whichever way the needs of the occasion may require with you.

"I will expect to hear from you very shortly upon your report and returns of the matter."

The memorandum included in the documents forwarded with the foregoing letter is as follows:

"STATE OF ILLINOIS } ss.
"COUNTY OF JEFFERSON }

"This mutual contract entered into this 31st day of May, A. D. 1929, by and between Guy S. Martin and Victor C. McLain, WITNESSETH: That on May 29, 1929, dated at St. Louis, Missouri, Victor C. McLain makes to the said Martin his promissory note for Twenty-five Thousand Dollars ($25000.00) due in 90 days, bearing interest from date at six per cent (6%) per annum.

"It is hereby mutually agreed between the parties in the said note that the note is made for a fixed sum of money *not yet advanced* and shall be valid only hereafter for such an amount as shall from time to time be advanced by the said Guy S. Martin, or his principals to the said Victor C. McLain." (Italics ours.)

In April of 1930, the Midwest Engineering Company was in bad financial condition. Mr. McLain executed a bill of sale from the Midwest Engineering Company to George E. Hoffman of all of the remaining equipment of the company for a recited consideration of Seventeen Thousand Dollars ($17,000). The purpose of this bill of sale is disputed. Appellant contends that it was given to prevent the creditors of the engineering company from taking the remaining assets of the company, that it was made but never delivered to Hoffman and that the machinery and equipment covered by the bill of sale were never received by him and that the consideration recited in it was never paid. Guy S. Martin was a stockholder in the Hoffman Construction Company. Respondent Victor C. McLain contends that the bill of sale was executed and that the remaining machinery in the possession of the Midwest Engineering Company was turned over to appellant Guy S. Martin through George Hoffman in satisfaction and payment of all outstanding obligations of himself and the engineering company to appellant.

The record indicates that after the failure of the Midwest Engineering Company, Mr. McLain continued the construction business in his own name and continued to deal with appellant. In April, 1930, one Kirby Smith, who was attor-

ney for McLain and the Midwest Engineering Company, wrote the following letter to Martin:

"McLain tells me that he and you have arrived at an understanding whereby you are to finance him on a certain sub-contract of State Highway making in Missouri. He is very desirous of putting up to you everything he has got for collateral and executing a contract to you for your protection to the last pound that he can pull and the last dollar he can raise. He has asked me to draft a contract and other papers covering this matter and be prepared to deliver to you as quickly as possible when he has secured the contract. He tells me further that he is expecting this contract will be made during the present week.

"In years past through the very friendly relationship of yourself and McLain, I have drawn a number of papers which were executed for your protection. All of them have been lived up to at this time insofar as I know and all of the understandings already entered into have been worked out.

"Now it occurs to me that upon the making and delivery of this new contract all of the old scraps and threads should be picked up and you and he start with a clean slate. To do this I wish you would at once go to your papers and take therefrom every note, mortgage, contract, or other papers which had to do with your past relations and mail them to me. I will treat them as an escrow placed in my hands by you to be held and deposited or whatever may be your order or wish . . ."

Upon receipt of this letter the appellant forwarded to Smith the documents requested which included one demand note dated May 29, 1929, for $25,000 signed by Midwest Engineering Company and by V. C. McLain, also an assignment of the real estate in California, which assignment was dated May 29, 1929. Smith acknowledged the receipt of the documents and stated:

"When I wrote you to forward me these papers I expected that these notes would show such credits as had been made or if some of them were paid for then which ones were paid, and then would be able from that to determine exactly how much McLain owed you yet . . ."

Appellant replied in part as follows:

"As you surmise, the only record I have of the amount Mac owes me is a ledger account, which shows a balance due at this date of $40,951.52, including interest to date . . ."

Considerable correspondence between Kirby Smith and appellant ensued. On February 15, 1935, Kirby Smith died. Appellant thereafter demanded the assignment of the California land to him and also demanded payment of the $25,000 note. On April 29, 1936, he filed a complaint alleging the execution of the promissory note in the sum of $25,000 by Mr. McLain and that it was secured by the assignment of the real estate contract above mentioned; that it was given as security for *"moneys advanced"* and to be advanced; that the note has never been paid and is still due and owing; that demand has been made to have the property transferred to his name as security for the promissory note; that the moneys advanced by appellant to Mr. McLain were used in whole or in part in the purchase of the property; that Mr. McLain transferred the real property to his wife L. M. McLain for the express purpose of defeating appellant's rights. Appellant then prayed that the property be declared to be held in trust by L. M. McLain for and on behalf of appellant as security for the loan; and that respondents be ordered to execute a deed of trust in that amount upon the property. The contract of purchase between Arthur and Addie Thresher and Victor and Maud McLain was attached as an exhibit. It contained the following conditional assignment:

"STATE OF ILLINOIS ⎱ ss.
"COUNTY OF JEFFERSON ⎰

"For value received I hereby assign and transfer the within real estate contract for deed to Guy S. Martin, conditioned also that it shall stand as collateral for the payment by me of a certain promissory note for Twenty-five thousand dollars ($25,000.00) made to the said Guy S. Martin dated at St. Louis, Missouri, May 29, 1929, due in ninety (90) days.
"Victor C. McLain."

No claim was made in the original complaint for any balance due upon an open book account. An amended complaint was filed claiming that the above mentioned assignment constituted an equitable mortgage upon the property described and in addition to the allegations in the original complaint claimed that there was a balance of $45,047.30 due and owing from Victor C. McLain and alleging that appellant has a lien on the respondents' real property described in the original complaint, and that they be enjoined and restrained from asserting any interest in and to that land adverse to that of the appellant.

The respondents answered the complaint. Victor C. McLain admitted the execution of the assignment and the promissory note but denied that the note or assignment was given to the appellant for moneys advanced to the respondent; claimed that title to the property was conveyed to L. M. McLain by grant deed for a valid consideration; alleged that the promissory note was fully paid, satisfied and settled about April 7, 1930, when at the instance and request of the appellant Mr. McLain caused to be transferred certain construction equipment and other property to G. R. Hoffman and the appellant in full satisfaction and payment of any and all indebtedness to appellant. Other special defenses such as lack of consideration, statute of limitations, laches, and community property interests of Mrs. McLain, were alleged and the trial court found in accordance with those defenses. It found that Victor C. McLain and Maud F. McLain entered into the contract to purchase the land as alleged; that Victor C. McLain, in the State of Illinois, executed the promissory note for $25,000 on May 29, 1929, and executed the assignment of the real estate contract to appellant; that there was no money consideration or other thing of value given for the execution and delivery of the instruments; that the respondent Mr. McLain did not agree to pay any past obligation as a consideration for the note or assignment; that he did not advance nor agree to advance any money on the note or assignment; that he did not agree to pay any future debts or obligations of the Midwest Engineering Company or of Victor C. McLain; that he did not part with anything of value or make any agreement to part with anything of value in consideration for the execution of the note or the assignment; that the note and assignment were executed as an accommodation to the appellant for the purpose of increasing his credit standing and/or to enable him to obtain finances; that appellant had not advanced, prior to the execution of the note, any money which was to be secured by the execution of the note and assignment; that he did not agree to make any advances of any money or thing of value in the future and that he did not advance to the respondents or extend or advance on behalf of them from the 29th day of May, 1929, to and including September, 1934, the sum of $45,047.30, or any other sum whatsoever; that during the month of May, 1930, the appellant returned and delivered the promissory note and purported assign-

ment to Mr. McLain and cancelled them; that subsequent to the return of the promissory note and purported assignment Mr. McLain retained possession of them and that appellant is now endeavoring to falsely and fraudulently convert them to his own use contrary to representations made by him at the time they were executed and deposited with him; that by the execution of the assignment Mr. McLain did not intend to give and did not give to the appellant an equitable mortgage; that L. M. McLain is the owner of the property and that appellant has no right, title or interest in it; that at no time did appellant advance any sum of money to respondents for the purpose of paying any of the purchase price of the property either in whole or in part; that the transfer of Victor C. McLain's interest in the property to L. M. McLain was for a valuable consideration; that she had no knowledge, actual or constructive, of any claimed interest of appellant in or to the property; that at no time did he inform her that he had or claimed any interest in the contract of purchase or the land until she was served with a copy of the complaint; that by his acts and declarations he deliberately, knowingly and intentionally induced her to establish herself in and alter her position to her own disadvantage with respect to the matter declared upon; that subsequent to her obtaining an assignment to the contract of sale and the land described therein and prior to the filing of the action, she expended money and erected and constructed improvements on the land; that she believed at all times that he had no interest in the contract nor the land in the contract described; and that plaintiff has been guilty of laches and unreasonable delay in bringing the action.

The court then found that at all times subsequent to May, 1929, up to and including December 4, 1934, the respondents and each of them were residents and citizens of the State of Illinois; that the appellant now is and at all times mentioned was a citizen and resident of the State of Missouri and that at no time was he a citizen of the State of California; that the respondents never were residents or citizens of the State of Missouri; and that the residence of the respondents was at all times known to the appellant since the date of the note and assignment and that Victor C. McLain, throughout his residence in the State of Illinois, visited the appellant from time to time at St. Louis, in the State of Missouri, in his place of business there. The court found that the cause of action

was barred by section 361 of the Code of Civil Procedure of the State of California. By its judgment it denied any relief to appellant.

Appellant first contends that because respondent Mr. McLain gave the promissory note and the assignment of the contract for the purchase of the land to appellant and appellant later made advances to McLain upon it, the note and assignment constituted an equitable mortgage upon the land which he was entitled to have foreclosed. The execution of the instruments is admitted. Appellant never recorded the assignment; never credited respondents' account with the amount of the note; the books did not reflect any transaction respecting it; no payments were ever credited on the note; and the note and assignment, together with other notes and mortgages all totaling $91,765.64, were returned to Smith, the attorney, for reasons expressed in the letter above mentioned. Smith is now deceased. Each party claims that his testimony, as to the true facts, would be most valuable to him. The trial court had before it the system and method previously used by appellant in securing notes and mortgages for the purpose of inducing the bank to make loans to appellant. From those transactions it readily appears that appellant did not intend to apply the proceeds to any indebtedness of respondent McLain but merely adopted this method and system for the purpose of deceiving the bank or creditors of McLain. A brief summary of these transactions convinces us that the mortgage and assignment here involved were to be used only for the purpose as found by the court. Victor C. McLain testified that on previous occasions and from time to time the Midwest Engineering Company had executed promissory notes and other evidences of indebtedness and delivered them to the appellant for the purpose of aiding and assisting the appellant in obtaining from other sources the necessary and proper credit to conduct respondents' business and that the $25,000 note and assignment on the California land were for that purpose only. The evidence shows that on April 14, 1926, the Midwest Engineering Company executed in favor of Martin a chattel mortgage in the sum of $25,000 on certain machinery to secure a note in that sum. Martin testified that this note was never paid. No action was taken on it by him. No claim is now being made for it. This was one of the notes and mortgages returned to attorney Smith with the assignment and note here in issue. There was

another note dated "1/13/30" for $25,000 enclosed, also one note dated February 15, 1929, for $16,765.64, and one chattel mortgage dated February 15, 1929, for $16,765.64. No claim is being made for any sums due under them. The note and chattel mortgage dated April 14, 1926, were mailed to Martin with this instruction:

"We enclose herewith our ninety-day note for $25,000 and are attaching a chattel mortgage for like amount, the plan, as per our conversation, being for you to use this note and chattel mortgage in securing a loan for us of $12,000 . . ."

The evidence further discloses that on August 1, 1927, Mr. McLain once before assigned his interest in the California real estate here involved to Martin for some reason which is not apparent from the record. This assignment was unrecorded. At the same time he executed a bill of sale to appellant of a great quantity of machinery owned by the Midwest Engineering Company. There is no record of this transaction on the books of appellant. He testified that he did not recall the transaction. This rather indicates that as far back as 1926, the appellant was obtaining instruments from the Midwest Engineering Company for the purpose of obtaining money from his banker and that the execution of that bill of sale and assignment of the California land dated August 1, 1927, was to increase the financial credit of Martin. Martin claims that those instruments were given to protect Midwest Engineering Company from its creditors; that "Mr. Smith suggested that in order to keep Mr. McLain going. Mr. Smith was always working to keep McLain's credit up. I didn't record it. There wasn't any consideration. I didn't give him any credit on the books." Under date of February 15, 1929, in a letter to Martin enclosing the note and chattel mortgage for $16,765.64, is found this statement by the secretary-treasurer of the Midwest Engineering Company: "Am enclosing herewith note for $16,765.64, dated today, 7%, and due in six months, together with chattel mortgage, signed and acknowledged before justice of peace. I arrived at the amount by adding an even $8,000.00 to the amount of your last statement to us. As I explained to you, Mac wants you to have this for your protection, if necessary, by someone pushing us too hard to raise money on . . ." At that time the record indicates that the Midwest Engineering Company owed only $8,765.67 to the appellant. The evidence clearly shows in that transaction that an inflation of $8,000 was con-

cocted and planned by the parties; that the inflation was apparently for the purpose of presenting the chattel mortgage and note to a banking institution either directly or in a financial statement for the purpose of obtaining credit. Appellant now claims that the personal property represented in that chattel mortgage was in fact only worth $1,600. The trial court had the right to believe from the evidence that the mortgage and assignment here involved were but a similar spasm of executing instruments requested by the appellant for similar purposes. As further evidence that Martin had cancelled the $25,000 note and returned the security therefor, we find that on December 20, 1933, several years after the assignment of the real estate contract was returned to attorney Smith, Martin wrote to Mr. McLain and said: ''I would appreciate it, Mac, if you will assign your sales contract to me, not only as additional security for what you owe me, but primarily in order to keep your other creditors from tying it up . . .'' The claimed unpaid note and assignment here involved were found in the possession of the maker. There is a presumption that an obligation delivered up to a debtor has been paid. (§ 1963, Code Civ. Proc., subds. 9 and 13.) The portion of the judgment denying appellant relief in respect to the note and claimed equitable mortgage is fully supported by the evidence.

Appellant next contends that in view of the fact that he introduced a detailed account, checks and vouchers supporting and showing that respondent Mr. McLain was indebted to him, that McLain's denial of such indebtedness and other evidence offered in support of his testimony were not sufficient to support the finding that respondent McLain was not indebted to him. If appellant's record of account is true and correct, as testified to by him, the trial court, in the absence of any defense thereto, might have been fully justified in awarding judgment in appellant's favor against Mr. McLain upon the open book account. This, however, is not the question before us. The trial court found in all particulars in favor of respondent Mr. McLain on this issue. The question is whether there is any substantial evidence supporting the finding of the trial court. The weight to be given that testimony is a matter entirely for the trial court, even though the weight of evidence may appear to us to be otherwise. (*Chichester* v. *Seymour*, 28 Cal. App. (2d) 696 [83 P. (2d) 301]; *Bennett* v. *Chandler*, 52 Cal. App. (2d) 255 [126 P. (2d) 173].)

In the light of this rule, we will review some of the evidence on that subject. On April 19, 1930, Martin wrote attorney Smith that McLain then owed him $40,951.42 on his ledger account. It was at about this time that the Midwest Engineering Company encountered financial difficulties and the corporation was abandoned.

Mr. McLain testified that in April, 1930, he went to Martin's office and that Martin and he agreed that upon any settlement of his account and of the account of the Midwest Engineering Company, he would turn over all of his equipment to Martin; that the equipment was "worth a lot more than his account . . . that there was other accounts to be taken care of yet and I explained to him some of those accounts I was going to take care of myself with assignment of balance of payments, unfinished payments on paving jobs." He then testified that Martin told him his account was "nine thousand one hundred and some dollars" but to place it at seventeen thousand dollars which would take care of his claim and more claims that he felt would have to be paid by him; that he gave a bill of sale of his machinery (in which the consideration was fixed at $17,000) to the Hoffman Construction Company, of which Martin was a stockholder, at Martin's request and for Martin's benefit; that he did not owe Hoffman Construction Company any money at any time.

There is some dispute in the evidence as to the amount of machinery that was turned over to Hoffman Construction Company. In the record is a list prepared by Hoffman Construction Company, of certain machinery and fixtures. This list is headed "C. E. HOFFMAN CONSTRUCTION CO., Lincoln, Illinois. List of Equipment taken over by us from the Midwest Engineering Company for Guy S. Martin, also disposition thereof:" On September 22, 1930, the Hoffman Construction Company was negotiating with Attorney Smith about the price it should receive for the McLain equipment. It would therefore appear from this testimony that McLain intended the assignment of the machinery to operate as a satisfaction of all present and future obligations of McLain and the Midwest Engineering Company. If the trial court believed this testimony its finding in this respect cannot be disturbed.

The items of account themselves are open to question. In the group of checks offered in evidence, consisting of 221, only 14 are made payable to Victor C. McLain. These 14

checks aggregate the sum of $3,116. Some of the remaining charges against the McLain account consisted of about 39 checks which were issued by Martin direct to the Tower Grove Bank. They totaled $15,827.86. Respondents argue that as for as the record discloses, these checks may have been issued by Martin to cover his personal indebtedness existing between himself and the Tower Grove Bank or that he may have issued these checks and obtained cash thereon for his own personal use. The witness Martin was indefinite in reference to the proof in respect to these items. On cross-examination he testified: "Q. Can you tell from the ledger sheets of any advances made? A. I might be able to do that. I wouldn't know where the advances went to. Q. Your ledger sheets are recapitulation, that wouldn't show it? A. No." While the evidence is not entirely satisfactory and convincing that the respondent McLain has fully paid and satisfied all legitimate and legal charges against him, it cannot be said that there is no evidence to support the finding of the court on that subject. In view of this determination, it will not become necessary to decide the other defenses raised by the answer.

Judgment affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied September 10, 1942.