[Civ. No. 10516. Second Appellate District, Division One.—June 30, 1936.]

MRS. GEORGE EDWARD BAMBER et al., Respondents, v. ALIDOR J. BELPREZ, Appellant.

Nourse, Betts & Jones for Appellant.

Clock, McWhinney & Clock and Henry H. Clock for Respondents.

ROTH, J., *pro tem.*—Plaintiffs are the widow and children of George Edward Bamber, deceased, who was killed in an accident out of which this action arises. On February 2, 1935, at about 7:30 P. M., defendant was driving an automobile at a speed of approximately 40 miles per hour north on Cherry Avenue at the point of its intersection with 65th Street in the city of Long Beach. At the time defendant crossed the intersection and for some distance prior thereto, he was traveling approximately 75 feet back of another car. In front of the latter car there were several others. The corner of 65th Street and Cherry Avenue is a bus stop for

busses operating north and south on Cherry Avenue, and the southwest corner thereof is improved with a small business block, consisting of two stores, a market and a cafe. Opposite the cafe, which is the corner store, there is an overhanging arc light. Immediately prior to the accident, deceased had been in the cafe, and had partaken of two glasses of beer, and was in the act of crossing Cherry Avenue from west to the east to get to his automobile, which was parked on the dirt shoulder contiguous to the east edge of Cherry Avenue. When three feet to the west of the east edge of the paved portion of Cherry Avenue, deceased was struck by a portion of the bumper of defendant's car, lifted to the crown of the left front fender, carried to the cowl, where his body made an indenture, and then was thrown approximately 45 feet to the northwest. The impact was audible two blocks away. Defendant admitted he did not see deceased until 10 or 15 feet before the impact; that he did not see the arc light on the corner; that he is near-sighted and high-strung; that he did not look for anyone near the business block mentioned, as he approached from the south to the north; that the visibility at the time of the accident was clear for 200 feet; that he struck deceased, who was in the easterly half of the highway and that he sounded no warning. He stated, however, that he saw the car of the deceased, which, as stated, was parked on the dirt shoulder off the east edge of the highway. In this connection he testified: " . . . I was watching this car because it was on my side; in case it would pull out, there would be danger of a collision. . . . Mr. Clock: What did you do when you began watching this car so closely? A. I was right following the traffic, of the other car. Q. Did you slow down? A. No. Q. Did you sound your horn? A. I was too far away. Q. How far were you? A. About 75 or 100 feet."

The record shows that decedent, when he left the cafe, stopped at the curb before he crossed Cherry Avenue, looked in both directions and commenced to walk directly east in the unmarked crosswalk and was entirely sober at the time. Although the actual collision between deceased and the automobile was not seen, a logical inference is that deceased was struck by the front of defendant's automobile, an eye-witness testifying that because another auto passed between him and deceased at the time he did not see the actual impact. De-

fendant testified that at the time in question he could have stopped his car at 100 feet, and the evidence shows that when deceased "was a little past the center of the pavement", defendant's car was 150 feet to the south. The evidence showed, further, that defendant did not stop before or after hitting deceased. In this respect defendant testified that he applied his brakes, but that it was too late, and that after the impact he released the brakes and allowed the car to coast away for several thousand feet; that when he turned around and returned to the scene of the accident, he was afraid to stop, because of the muttering of the crowd that had already collected. Defendant admitted that he saw the cafe building when within 75 or 100 feet of it, but saw no one around it, nor did he see anyone crossing Cherry Avenue; that he did not sound his horn, because "he was too far away". At that time he testified he was 75 to 100 feet to the south. He then testified: " . . . About 15 or 20 feet before I reached the line of that car to the right (referring to deceased's car parked on the shoulder of the highway), I observed a person in the road, about in the middle of the road, a person walking east—, . . . So I applied my brakes, and it was barely a fraction of a second before the impact occurred." Then, according to his testimony, the following took place: "Q. What happened when you applied them? A. I slowed up. Q. Did you keep going straight, or swerve? A. I did not swerve at all. Q. And you did not stop? A. No. Q. How much did you slow down, if you can say? A. I don't know. Q. Was it slightly, or a great deal? A. As soon as the impact occurred, it was such a nervous shock to me— Q. Were you hurt? A. No, but it happened so quick, there was no warning, everything became hazy."

The jury brought in a verdict for plaintiffs. By its verdict the jury impliedly found that defendant was negligent, and that there was no contributory negligence on the part of deceased. These were questions of fact for the jury, and its findings thereon, being amply supported by the evidence, are binding upon this court. (*Gustafson* v. *Blunk*, 4 Cal. App. (2d) 630 [41 Pac. (2d) 953]; *Donovan* v. *P. Lorillard Co. of Del.*, 10 Cal. App. (2d) 253 [51 Pac. (2d) 142]; *Park* v. *Orbison*, 43 Cal. App. 74 [184 Pac. 428]; *Crooks* v. *Doeg*, 4 Cal. App. (2d) 21 [40 Pac. (2d) 590]; *Jones* v. *Barion*, 103 Cal. App. 59 [283 Pac. 885]; *Stealey*

114

v. *Chessum,* 123 Cal. App. 446 [11 Pac. (2d) 428]; *Maggart* v. *Bell,* 116 Cal. App. 306 [2 Pac. (2d) 516]; *Off* v. *Crump,* 40 Cal. App. 173 [180 Pac. 360]; *Long* v. *Barbieri,* 120 Cal. App. 207 [7 Pac. (2d) 1082]; *Baldock* v. *Western Union Telegraph Co.,* 127 Cal. App. 141 [15 Pac. (2d) 199]; *Darling* v. *Pacific Electric Ry. Co.,* 197 Cal. 702 [242 Pac. 703]; *Coughman* v. *Harman,* 135 Cal. App. 49 [26 Pac. (2d) 851]; *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125].)

 Since we are of the opinion that, on the facts as governed by the authorities cited, the verdict returned by the jury cannot be attacked, it follows that the trial court did not err in refusing to grant a motion for a directed verdict. In our opinion, it would have been error to have granted such a motion. (*Henry* v. *Lingsweiler,* 81 Cal. App. 142, 143 [253 Pac. 357]; *Hall* v. *Barber Door Co.,* 218 Cal. 412, 415 [23 Pac. (2d) 279].)

Plaintiff, Mrs. Bamber, during the course of the trial, testified that when defendant called upon her she said among other things: "He told me he was very sorry. And, of course, I realized who he was. He told me he would be glad to do anything. That he was heavily insured, and he would give me anything he had, take care of the children." All reference to the insurance company was stricken out by the trial court and the jury was admonished not to regard such reference for any purpose both by an oral statement and a written instruction by the trial court. Defendant contends that, because of this allusion to the insurance company, a mistrial should have been granted in spite of the action of the trial court. Abundant authority sustains the trial court's position in its refusal to grant a mistrial under such circumstances. (*McPhee* v. *Lavin,* 183 Cal. 264 [191 Pac. 23]; *Symons* v. *Wooden,* 97 Cal. App. 39 [274 Pac. 987]; *Rowe* v. *Rennick,* 112 Cal. App. 576 [297 Pac. 603]; *Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954]; *Maberto* v. *Wolfe,* 106 Cal. App. 202 [289 Pac. 218]; *Harju* v. *Market St. Ry. Co.,* 114 Cal App. 138 [299 Pac. 788]; *King* v. *Wilson,* 116 Cal. App. 191 [2 Pac. (2d) 833]; *Handley* v. *Lombardi,* 122 Cal. App. 22 [9 Pac. (2d) 867]; *Noble* v. *Bacon,* 129 Cal. App. 177 [18 Pac. (2d) 699]; *Lahti* v. *McMenamin,* 204 Cal. 415 [268 Pac. 644]; *Weiner* v. *Mizuta & Tawa,* 6 Cal. App. (2d) 142 [44 Pac. (2d) 42].)

A number of instructions are complained of. A perusal of these instructions, separately and as a part of the charge as a whole, indicates no prejudicial error. We find evidence warranting all instructions requested by the plaintiff and given by the trial court. It is settled that the state of the record may be considered to determine whether the error is harmful or prejudicial; (*Hirshfeld* v. *Dana*, 193 Cal. 142 [223 Pac. 451]); that harmless error is to be disregarded (art. VI, sec. 4½, Const. of California; Code of Civil Procedure, sec. 475; *Clark* v. *McClurg*, 215 Cal. 279, 285 [9 Pac. (2d) 505, 81 A. L. R. 908]); and that instructions must be read as a whole. (*Anderson* v. *Southern Pacific Co.*, 129 Cal. App. 206 [18 Pac. (2d) 703].)

The judgment appealed from is hereby affirmed, and the appeal from the order denying defendant's motion for a new trial is dismissed, as the law does not authorize an appeal from such an order.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 27, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 27, 1936.