[Civ. No. 14309.   Second Dist., Div. One.   May 11, 1944.]

JOHN LEVIN, Respondent, v. MARGARET ESTELLE MARTIN, et al., Appellants.

Nourse & Jones for Appellants.

Russell H. Pray, Samuel J. Nordorf, Darwin H. Wolford, C. J. McGovern and Henry F. Walker for Respondent.

YORK, P. J.—From a judgment in favor of plaintiff, defendants prosecute this appeal, contending that the evidence (1) shows that plaintiff was guilty of contributory negligence as a matter of law; (2) fails to show any negligence on the part of defendants, and is therefore insufficient to support said judgment.

The accident resulting in the instant litigation occurred around seven o'clock in the morning of December 24, 1942, at the intersection of Locust Avenue and Fourth Street in the city of Long Beach. A copy of the map of the intersection used at the trial herein is not included in the record; consequently, some of the testimony, which refers to certain points on said map without further explanation, is more or less unintelligible and unenlightening.

Locust Avenue runs north and south, Fourth Street, east and west, and they intersect at right angles, each street being 50 feet wide with curbing, parkway and sidewalks. The pedestrian crosswalk across Locust on the south side of Fourth Street is 16 feet in width. At the time of the accident, said intersection was included in a "dim out" zone, it was raining slightly and the visibility was poor. Respondent was on his way to work, walking in a westerly direction on the south sidewalk of Fourth Street approaching Locust Avenue, it being his intention to continue westward on Fourth Street across Locust to Pine Avenue, the next street west of Locust. When respondent reached the easterly curb line of Locust Avenue, he stopped, looked to his right (north), to his left (south), and ahead (west, the direction from which appellant was approaching). Seeing no traffic, he walked straight ahead and had advanced only a few steps in his progress across Locust, not reaching the center thereof, when he was struck by appellant Margaret E. Martin, who was driving an automobile owned by her sister, appellant Marion A. Martin. Respondent lost consciousness momentarily, and when he revived he was lying on the pavement "just where about the stop mark is," with a man bending over him. He attempted to rise but was unable to do so, having sustained

a fracture of his right leg just below the knee, and bruises on the right side of his face and over his eye. He was removed to the steps of a church located at the southwest corner of the intersection. He testified that he was not wearing glasses, had walked in dim outs before, knew he was in a dim out area and that automobiles were equipped with dim out lights, and that he was able to see such dim out lights as they came toward him in the street, but did not see appellants' car at all; that he did not know what struck him and did not know whether he was thrown by the automobile or not. On cross-examination respondent was questioned with respect to a deposition which he made before the trial in which he was asked: "When you came to, where were you lying on the street? A. Well, somewhere in the street near the crossing. Q. How far south of the crossing were you when you came to? A. I really couldn't say. Q. Were you as much as 15 feet? A. It would be very difficult for me to designate the exact spot. Q. I understand that, but would you say you were between 15 and 30 feet? Would that be a fair estimate? A. Yes, sir, approximately that. Q. Now there's no question about that, is there? I mean that's your best recollection? A. Yes." Respondent acknowledged that he so testified, but stated "That 15 and 30 feet was your (the attorney's) idea, not mine." To this counsel replied: "Maybe it was my idea. I'll confess to it at this time, but tell me please, here, when you read your deposition over, you didn't change those answers?" Respondent admitted he made no changes in the deposition.

At the time of the collision, appellant Margaret E. Martin was driving her sister's automobile in an easterly direction on the south side of Fourth Street, about 4 feet from the center of the street, at a speed of from 8 to 10 miles per hour. She was approaching Locust Avenue in the opposite direction from that in which respondent was walking. In order to proceed south on Locust, appellant driver prepared to make a right-hand turn at the intersection in question, and "moved in" considerably from the center of the street; then, slowing down to about 6 or 8 miles per hour, she made a wide turn around the corner. After appellant was headed due south on Locust, something collided with her automobile, according to her own testimony, whereupon she stopped immediately and discovered respondent "lying right by my front fender."

When she stopped, her car was about 4 feet from the west curb of Locust Avenue. She did not blow the horn or give any warning signal, was in high gear as she turned the corner, and did not notice anyone in the intersection. This witness drew a line on the map used at the trial herein showing the course her car took around the corner in question, and she made a mark indicating the position of her car when she felt the impact with respondent, which point it was stipulated by counsel for both parties was ''16 feet . . . from the curbing down to the stop line.'' Appellants' car was not damaged.

The witness Drake, who was walking south on the east side of Locust at a point 150 or 200 feet north of its intersection with Fourth Street, testified: ''I happened to be looking down towards the corner of Fourth and Locust. I noticed this car pull up to the corner, going east on Fourth, and they made a stop, pulled up very slowly and made a stop, a hesitating stop, and then started around the corner, and in turning the corner they made a rather wide swing, and just after passing the intersection, I heard an impact, such as a car running over a cardboard box or something, and I saw a man fall in front of the headlights of the car . . . At the time I heard the impact, the automobile came to a stop then . . . it just made a wide turn, but was on its own side of the street''; that respondent's body was lying ''about even with the church steps,'' a distance of about 25 or 28 feet south of the corner.

Sergeant of Police Jessing, who investigated the accident, took the statements of the witness Drake and the driver of the car, appellant Margaret E. Martin, who ''pointed out the spot at which they said the accident occurred.'' Using that as a starting point, said witness measured the distance therefrom to the south curb of Fourth Street, and found that ''The location of the impact was 34 feet south of the south curb of Fourth Street, and 20 feet east of the west curb of Locust.'' Police Officer Woelthausen, who assisted Sergeant Jessing in making the measurements at the scene of the collision, corroborated the latter's testimony, and in addition testified that they measured the pedestrian lane on the south curb line of Fourth Street and that it was 16 feet wide.

Appellants urge that respondent was guilty of contributory negligence as a matter of law, because (1) he violated

section 562 of the Vehicle Code in that it is shown by the evidence that he crossed the street outside of a crosswalk and failed to yield the right of way to appellant; also (2) because he failed to exercise ordinary care in the manner in which he crossed said street.

An examination of the evidence which is hereinbefore set out in narrative form, reveals that respondent when he reached the intersection looked to his right, to his left as well as ahead, and then walked straight ahead until he was struck and knocked unconscious by appellants' automobile. Respondent's description of the collision placed him in the crosswalk a few feet east of the center line of Locust Avenue at the time he was struck, and the jury was justified in making an implied finding to that effect. Even though appellant Margaret E. Martin gave positive testimony that she stopped the car immediately when she felt the impact between her car and respondent's body, it is logical to believe that respondent may have been carried a few feet by the left front fender and was dropped therefrom as appellant brought the car to a stop. At any rate, there is enough conflict presented by the evidence on the issue of contributory negligence to make it a question of fact for the determination of the jury.

The rule applied to a situation analogous to that here presented is stated in *Young* v. *Tassop,* 47 Cal.App.2d 557, 562 [118 P.2d 371], quoting from *White* v. *Davis,* 103 Cal. App. 531, 542 [284 P. 1086], as follows: " 'There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.' "

In the instant case, respondent did look in all directions before leaving the curbing, saw no lights of approaching cars and heard no horns or other warning signals. By so doing,

he took some precaution for his own safety and the question whether he exercised due care was one for the jury.

It is also contended that the judgment herein must be reversed because of a total lack of evidence that appellant Margaret E. Martin, the driver of the automobile, was guilty of any negligence proximately causing respondent's injuries. In this connection, it is argued that in the dim out conditions existing at the time in question respondent had a better opportunity to see and observe the approach of appellant than the latter had to see and observe respondent.

However, it is clear from the record that, although she decreased her speed to a very moderate rate, said appellant did not stop but made her right-hand turn in high gear, making a wide swing into the intersection at a point where she should have anticipated the presence of pedestrians. It thus appears that sufficient evidence was produced from which the jury was justified in inferring that appellant driver was negligent in her operation of the car in the dim out area. As was so aptly stated in the recent case, *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689] : "It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) (*Crawford* v. *Southern Pacific Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].) . . . The critical word in the definition is *'substantial';* it is a door which can lead as readily to abuse as to practical or enlightened justice. It is common knowledge among judges and lawyers that many cases are determined to the entire satisfaction of trial judges or juries, on their factual issues, by evidence that is overwhelming in its persuasiveness but which may appear relatively unsubstantial—if it can be reflected at all— in a phonographic record. Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve the doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the

court should be realistic and practical. Upon such view of the law we cannot hold that any essential finding in this case is unsupported.''

In the instant case the jury brought in its verdict in favor of respondent thereby impliedly finding that appellant Margaret E. Martin, the driver of the car, was negligent, and that there was no contributory negligence on the part of respondent pedestrian. These were questions of fact for the jury and its findings thereon being supported by the evidence, are binding on this court. (*Bamber* v. *Belprez,* 15 Cal.App. 2d 110, 113 [58 P.2d 1325].)

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.